UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GILFORD, | No. C 09-1774 SI (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| R. K. WONG, Warden, | |
| Respondent. | |

**INTRODUCTION**

This is a federal habeas corpus action filed by a pro se state prisoner pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is DENIED.

**BACKGROUND**

In 2005, a San Mateo County Superior Court jury found petitioner guilty of burglary, assault by means of force likely to produce great bodily injury on the victim, battery resulting in serious bodily injury on the victim, and causing unjustifiable mental suffering to a child. (Ans., Ex. L at 1–5.) The trial court sentenced petitioner to a total of seven years in state prison. (Id. at 4.) Petitioner was denied relief on direct and collateral state review. This federal habeas petition followed.

Evidence presented at trial showed that in 2003 petitioner unlawfully entered the house of his former girlfriend, Katina Britt, and waited for her to return home. Upon her return, petitioner attacked Katina, punching her in the face and repeatedly kicking her after she fell to the ground. Her son, J., witnessed the assault and called 911. (Id. at 2–3.)

As grounds for federal habeas relief, petitioner alleges that (1) the trial court denied his rights under the Confrontation Clause when it admitted the tape of J.'s 911 call into evidence, admitted Katina's statements to her physician, and restricted his cross-examination of a witness; (2) the trial court violated his due process rights when it refused to excuse biased and misinstructed prospective jurors; and (3) new evidence shows that the 911 tape should have been excluded.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but

2

unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

## DISCUSSION

### I. Confrontation Clause

Petitioner contends that the trial court violated his Sixth Amendment right to confront a witness against him when it (A) allowed for the jury to hear J.'s taped 911 conversation, (B) admitted Katina's statements to her physician, and (c) restricted his ability to confront an eyewitness. (Pet. at 5–6.)

### A. Admission of J.'s 911 Tape

Petitioner claims that the trial court violated his Confrontation Clause rights when it admitted the tape of J.'s 911 call. (Pet. at 5.) Petitioner asserts that playing the tape for the jury violated his Confrontation Clause rights because J. identified petitioner as Katina's attacker, but petitioner was not able to cross-examine J., who was unavailable to testify. (Id.)

The state appellate court rejected petitioner's claim, finding that J.'s statements to the dispatcher were not "testimonial statements" under Crawford because they were made with the purpose of soliciting assistance during an ongoing emergency. (Ans., Ex. L at 9.) The state appellate court summarized the facts as follows:

> At trial, the victim was called to testify but refused to answer questions. Her son, J., who witnessed the assault, did not appear at the trial, having run away from home. Finding both witnesses to be unavailable, the trial court admitted evidence of their out-of-court statements.
>
> The first such evidence was an audiotape of a 911 call made by J. near the time of the assault. Immediately after the dispatcher identified herself, J. said, "Hey somebody just . . . this dude just stepped my mom . . . can you send uh, an

3

ambulance please?" The operator transferred J. to the paramedic operator, to whom J. repeated his explanation, saying, "[T]his dude just broke in my, our house." The paramedic operator responded, "We got 911 on the way, what's going on?" Without further prompting, J. provided the operator with a vehicle license plate number, at which point the original dispatcher came back on the line. After brief confusion, the dispatcher reassured J. that help was on the way and then asked, "Do you know this man who hit your mom?" When J. said that he did, the dispatcher asked his name. J. identified [petitioner]. The operator then asked where [petitioner] went. J. responded, "He uh, he left. He live at, uh Modesto, California." The operator then asked if [petitioner] left in a car, at which point J. gave the same license plate number and described the car [petitioner] was driving. After some urging by J. to speed the dispatch of assistance, the dispatcher asked whether J. saw the police at the scene yet, at which point he responded, "Yes, I don't see no ambulance, hurry up . . . hurry up . . . hurry up . . . excuse me, can you tell them to hurry up? Look at my mom . . . look at my mom . . . look at my mom . . . look at my mom . . . hey, I know his license plate . . . yeah, I know his name is Dave Gilford . . . yes, my mom is down there on the floor . . . ." At this point, the call terminated.

The prosecution also presented the testimony of the victim's treating physician from the emergency room, who described her injuries and testified to statements made by the victim during her treatment. After his examination, the doctor had concluded that the victim had a contusion on her face, a possible concussion, and bleeding around one kidney, injuries which were consistent with punching or kicking. The doctor also read the notes taken by an emergency room nurse, who noted " 'assault by ex-boyfriend, patient punched and kicked in face, kicked in left flank . . . son witnessed and called 911.'" The doctor testified that the nurse asked about the manner in which the injuries were inflicted because the type of assault could affect the nature of the injuries and their treatment.

(Ans., Ex. L at 2–3).

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI. The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. Crawford v. Washington, 541 U.S. 36, 61 (2004). It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. Id.

Out-of-court statements by witnesses that are testimonial hearsay are barred under the Confrontation Clause unless (1) the witness is unavailable, and (2) the defendant had a prior opportunity to cross-examine the witness. Id. at 59. While the Supreme Court has not articulated a comprehensive definition of testimonial hearsay, "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a

4

1  former trial; and to police interrogations." Id. at 68. "Statements are non-testimonial when
2  made in the course of police interrogation under circumstances objectively indicating that the
3  primary purpose of the interrogation is to enable police assistance to meet an ongoing
4  emergency." Davis v. Washington, 547 U.S. 813, 822 (2006).  In Davis, the Court held that a
5  victim's initial statements in response to a 911 operator's interrogation were not testimonial
6  because the elicited statements, such as naming her assailant, were necessary to resolve the
7  present emergency. Id. at 826–29. "They are testimonial when the circumstances objectively
8  indicate that there is no such ongoing emergency, and that the primary purpose of the
9  interrogation is to establish or prove past events potentially relevant to later criminal
10 prosecution." Id. at 822.

11  Applying these legal principles to the instant matter, the Court concludes that petitioner
12 has not shown that he is entitled to habeas relief on this claim. The circumstances present here
13 indicate that there was an ongoing emergency. The dispatcher testified that she had been trained
14 to ask the proffered questions in order to appropriately respond to an emergency. (Ans., Ex. L
15 at 7.) At the time J. called 911, his mother had sustained what appeared to be serious injuries
16 and petitioner's whereabouts were unknown. Because any interrogation that occurred during the
17 911 tape was for the purpose of assisting emergency services in an ongoing emergency, J.'s
18 statements were non-testimonial in nature. Because non-testimonial statements do not provide
19 exercisable rights under the Confrontation Clause, petitioner was not deprived of his Sixth
20 Amendment rights when the trial court allowed for the 911 tape to be played to the jury despite
21 J.'s unavailability for cross-examination. Accordingly, petitioner's claim is DENIED.

### B. Admission of Katina's Statements to Her Physician

Petitioner claims that the trial court violated his Confrontation Clause rights when it admitted statements made by Katina to her physician into evidence. (Pet. at 5.) Because Katina's statements to her physician inculpated petitioner, and Katina was unavailable for cross-examination, petitioner contends that the admission of these statements violated his Confrontation Clause rights. (Id.)

The state appellate court rejected this claim, explaining that the statements were non-testimonial. (Ans., Ex. L at 10–11.) "[T]he information provided to the nurses and the emergency room physician was given for the primary purpose of facilitating [Katina's] treatment, even if the medical personnel were aware that information suggesting suicidal or criminal behavior would need to be reported." (Id. at 11.)

Based on this record, petitioner has not shown that he is entitled to habeas relief on his claim. Where the Supreme Court has never squarely addressed whether a particular type of statement is testimonial, a state court's admission of such statement at trial as non-testimonial is not "contrary to" clearly established Supreme Court precedent or an "unreasonable application" of Crawford, under 28 U.S.C. § 2254(d)(1). See Moses v. Payne, 555 F.3d 742, 754–55 (9th Cir. 2009) (finding state court's admission of victim's out-of-court statements to emergency room physician as non-testimonial statements not contrary to clearly established federal law or unreasonable application thereof, because Supreme Court had never "squarely addressed" whether statements made to doctors for purposes of medical treatment and diagnosis were testimonial). Accordingly, petitioner's claim is DENIED.

### C.   Cross-Examination

Petitioner alleges that the trial court denied his Confrontation Clause rights when it restricted his ability to cross-examine Katina's neighbor, who witnessed the assault and testified at trial. (Pet. at 6.) The state appellate court summarized the facts as follows:

> A neighbor who witnessed at least part of the assault also testified. The neighbor was in the parking area of the complex where she and the victim leased apartments when she heard an argument. She looked up toward the apartments, which were on the level above the parking area, and saw a man and a woman standing outside one of the apartments. She watched as the man punched the woman twice in the face, the second time with sufficient force to knock her off her feet, and then kicked her twice and "stomped" on her. At this point the neighbor yelled, "Stop," which caused the man to glance in her direction and then to run down the walkway connecting the apartments. At the end of the walkway, he jumped to the ground near where the neighbor stood and ran down the street. At trial, the neighbor identified defendant as the man she saw beating the victim. The neighbor also confirmed that J. witnessed the beating.
> . . . .

1
2
3
4

> After the close of the prosecution case, the defense sought to recall the neighbor who witnessed the assault. Defense counsel told the court that after the neighbor completed her testimony, counsel had learned that her nephew, a school friend of J., also witnessed the beating and that she, the neighbor, had been a victim of at least threats of domestic violence by a former husband. Counsel argued that the nephew's witnessing the assault made him a "victim" of the crime as well and that this connection and the past threat of domestic violence were grounds for bias.

5
6
7
8
9
10

> The trial court denied the motion under Evidence Code section 352, concluding that neither the involvement of her nephew nor any prior threat of domestic violence would have interfered with the neighbor's perception of events. The court concluded that "the probative value is outweighed by the undue consumption of court time. And when I say that, I'm not saying that because it's 11:15; I'm saying that because, in my view, it's unimaginable that this witness . . . [sic] having previously been a victim of domestic violence of some sort with her ex-spouse would thereby be biased . . . . The fact that she has been, perhaps, previously a victim of domestic violence, in my view, does not negate her ability to perceive and express her observations as she has done."

11 (Ans. Ex. L at 3-4).

12 The state appellate court rejected petitioner's claim, agreeing with the trial court that there
13 is no reason to believe the cross-examination, "[W]ould have produced a significantly different
14 impression of the neighbor's credibility, necessary to support a Confrontation Clause claim."
15 (Id. at 15.) The state appellate court highlighted that the witness lacked any personal ties to the
16 victim, and that no evidence suggested that the witness was aware that the events, at the time she
17 witnessed them, could be classified as domestic violence. (Id. at 14.)

18 The Confrontation Clause guarantees an opportunity for effective cross examination, not
19 cross examination that is effective in whatever way, and to whatever extent, the defense might
20 wish. See Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam). For instance, the
21 Confrontation Clause does not prevent a trial judge from imposing reasonable limits on cross-
22 examination based on concerns of harassment, prejudice, confusion of issues, witness safety or
23 interrogation that is repetitive or only marginally relevant. Delaware v. Van Arsdall, 475 U.S.
24 673, 679 (1986). However, "restrictions on a criminal defendant's rights to confront adverse
25 witnesses and to present evidence 'may not be arbitrary or disproportionate to the purposes they
26 are designed to serve.'" Michigan v. Lucas, 500 U.S. 145, 151 (1991) (quoting Rock v.
27 Arkansas, 483 U.S. 44, 56 (1987)). A defendant meets his burden of showing a Confrontation
28

7

Clause violation by showing that "[a] reasonable jury might have received a significantly different impression of [a witness's] credibility . . . had counsel been permitted to pursue his proposed line of cross-examination." Van Arsdall, 475 U.S. at 680.

To determine whether a criminal defendant's Sixth Amendment right of confrontation has been violated by the exclusion of evidence on cross-examination, a court must inquire whether: "(1) the evidence was relevant; (2) there were other legitimate interests outweighing the defendant's interests in presenting the evidence; and (3) the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness." U.S. v. Beardslee, 197 F.3d 378, 383 (9th Cir. 1999) (citations omitted).

Petitioner is not entitled to habeas relief on this claim. First, petitioner has not shown that the jury lacked sufficient evidence to assess the witness's credibility. The witness, aside from living in the same building, lacked any personal connection to the victim, and petitioner has failed to provide any persuasive connection between the witness's past and her recounting of the events here. If petitioner had been allowed to present evidence of the witness's alleged personal experience with domestic violence, the prosecutor would have been entitled not only to test this evidence, but to present rebuttal evidence. Such proceedings likely would have consumed a great deal of time. The Court concludes that the trial court's restriction of cross-examination on this topic was a decision reasonably taken in order to avoid an undue consumption of trial time. Third, even if petitioner's Confrontation Clause right was infringed upon here, any error was harmless. Because the information provided by the witness was similar to evidence provided by the 911 tape and statements made to the victim's physician, the preclusion of the witness's history of domestic violence could not have had a substantial and injurious effect or influence in determining the jury's verdict. Accordingly, petitioner's claim is DENIED.

//
//
//
//

## II. Jury Selection

### A. Refusal to Excuse for Cause

Petitioner claims that the trial court erred in refusing to excuse two jurors for cause when they demonstrated bias in favor of police officers. (Pet. at 6.)

A trial court's failure to strike a biased juror for cause will not constitute a Sixth Amendment violation so long as the jury that sits is impartial. Ross v. Okla., 487 U.S. 81, 88 (1988). The fact that the defendant had to use a peremptory challenge to achieve that result does not mean that the Sixth Amendment was violated. See id.; Poland v. Stewart, 169 F.3d 573, 583 (9th Cir. 1999). Petitioner must establish prejudice, e.g., that the jury as finally constituted was not impartial or that the loss of the peremptories forced him to accept a biased juror. Poland, 169 F.3d at 583.

The fact that a defendant has to use a peremptory challenge to remedy a court's failure to strike a juror for cause does not mean that due process was violated either. Having to use a peremptory challenge to help secure the constitutional guarantee of trial by an impartial jury is in line with the principal reason for peremptories; it does not amount to the loss of a peremptory challenge. See U.S. v. Martinez-Salazar, 528 U.S. 304, 314–16 (2000). "A hard choice is not the same as no choice." Id. at 315.

Here, the two prospective jurors with alleged bias were excused on peremptory challenges. Petitioner does not attempt to establish that the sitting jury was not impartial as a result of the trial court's failure to dismiss the two prospective jurors for cause. Finally, petitioner does not contend that the loss of peremptories forced him to accept a biased juror. Therefore, petitioner's claim is foreclosed by the above-cited authorities. Accordingly, petitioner's claim is DENIED.

### B. Instructions Regarding Police Credibility

Petitioner claims that the trial court created a structural error when it effectively vouched for police officer credibility and refused to excuse two prospective jurors for cause. (Pet. at 6.)

9

The state appellate court summarized the facts as follows:

> During the voir dire of individual jurors, one juror expressed concern about the court's direction that police officers should not be afforded more credibility than other witnesses merely by virtue of their status as officers. In discussing the issue with that juror, the court commented, "There might be some reasons sometimes why an officer gets credibility. And I'm not sure if this is why. For instance, an officer is trained to make certain observations. They go to the police academy. They learn how to observe. They write reports. Writing their reports shortly after they make the observances. They collect evidence. So sometimes their observations are more keen than maybe your eye. I don't know. [¶] Sometimes they have less bias, in a sense, that they work every day at their job. And if they are to lie, then they'd lose their job ultimately. [¶] On the other hand, the system is made of people. And people are fallible. And sometimes there's a bad egg in that system. So you have to always have a keen and watchful eye for those things. [¶] [Defense counsel's] point, I think, was: You know, would you give a police officer more weight only because he is a police officer? In other words, not because he's trained, not because maybe he's learned how to observe better than the average person but just because he was putting a uniform on." When the same issue was discussed by the prosecution with a second juror, the trial court interposed, "If a person comes here with a particular motive or bias, and you see that motive or bias, then that person is, perhaps, less credible than a person that has no bias or motive to lie. . . . [¶] . . . Just because a person's in uniform, doesn't make you automatically perfect. But there are certain factors that go in the wearing of a uniform, like your training. [¶] Those types of things. Those things you do consider. But just me putting on a police officer uniform tomorrow and showing up in court doesn't make me credible necessarily."
>
> Following the questioning, defense counsel challenged the two jurors for cause, concluding that voir dire demonstrated that the jurors would not be able to weigh the testimony of police officers impartially. The court declined, explaining that "it became clear [during questioning] they wouldn't just believe a police officer's testimony, they would[n't] just be for the fact that that person is a police officer, but would consider the other facets of the person pursuant to all the requirements." Defense counsel then used peremptory challenges to remove the two jurors.

(Ans. Ex. L at 15–16.)

The state appellate court rejected this claim explaining that

> the trial court's comments did not constitute 'vouching' for the police witnesses. Vouching is necessarily a technique applied to specific, individual witnesses. In its most general form, it is an attempt by the prosecutor to suggest that facts known to the prosecutor but not introduced at trial support the truthfulness of a particular witness's testimony.
>
> Alternatively, vouching is an attempt to place the prestige of the government behind a particular witness by, for example, invoking the general concept of police integrity to support the truthfulness of a particular officer's testimony. In this case, the trial judge made clear that he was speaking hypothetically only. The court's comments did not concern the particular officers slated to testify but addressed the potential testimony of police officers generally.

10

1  (Id. at 17.) The state appellate court further found that because the trial judge had repeatedly
2  reminded the jurors that the testimony of officers must be judged on their particular
3  circumstances and qualifications, the juror selection and instruction process had not been
4  impermissibly biased in favor of police officers. (Id. at 18.)

   Petitioner has not shown that the trial court's instructions constituted vouching. Rather, the trial court explained that each witness requires his or her own credibility assessment. The prosecutor and defense counsel reminded the jurors that police officers are not automatically more credible simply because they are men and women in a uniform. On this record, the Court concludes that petitioner's due process right to a fair trial was not violated. Accordingly, petitioner's claim is DENIED.

## III.  New Evidence

On September 5th, 2009, the Court noted in its Order to Show Cause that petitioner had failed to attach two exhibits to his petition. On September 15th, 2009, petitioner filed a new document with the Court. The filing contains a handwritten letter addressed to petitioner and signed by an individual claiming to be J., the son of Katina Britt, in which he recants his statements inculpating petitioner. The author writes:

> I, Jajuan Lamarr Britt-Jenkins, in my right mind write you this letter concerning Mr. Gilford. On the night my mother Katina Britt was beating [sic] I saw the man who did this and it wasn't Mr. David Gilford. I'm sorry that you had to go through this. But know [sic] that I'm grown, I need to tell the truth.

(Doc. #6, Ex. 1 at 2.) In his traverse, petitioner claims that this letter is written by J., and is J.'s admission to fabricating statements to the 911 operator. Petitioner asserts that, for this reason, the 911 tape should have been excluded. (Trav. at 5.) Respondent does not address this new evidence.

Petitioner is not entitled to habeas relief based on this new evidence. First, the letter is immaterial to whether the tape of the 911 call should have been admitted at trial. Even if J. now denies the veracity of his identification, his statements to the 911 operator were relevant to the question of petitioner's guilt, and petitioner has not shown that his constitutional rights were

11

1 violated by the admission of the taped statements. J.'s recantation, even if it had been available 2 at the time of trial, would have gone to the weight of the evidence, not its admissibility.

3 Second, insofar as petitioner's claim is a claim of actual innocence, habeas corpus relief 4 must be denied. "Claims of actual innocence based on newly discovered evidence have never 5 been held to state a ground for federal habeas relief absent an independent constitutional 6 violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 7 390, 400 (1993).

8 Having denied petitioner's confrontation clause claim, this Court finds that the newly 9 submitted evidence is unaccompanied by an independent constitutional violation in the 10 underlying state criminal proceeding. Accordingly, petitioner's claim is DENIED.

## CONCLUSION

The state court's adjudication of these claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED**.

DATED: August 30, 2010

SUSAN ILLSTON
United States District Judge